IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID REBOLAR, a minor, by and           )
through his father and legal guardian,   )
ALEJANDRO REBOLAR,                       )
                                         )
          Plaintiff,                     )
                                         )          No. 10 C 5787
     vs.                                 )
                                         )          Jeffrey T. Gilbert
CITY OF CHICAGO, ILLINOIS, and           )          Magistrate Judge
CHICAGO POLICE OFFICER                   )
JOHNSON, Star No. 8265, CHICAGO          )
POLICE OFFICER STACK, Star 2339,         )
CHICAGO POLICE OFFICER                   )
HAWKINS, Star No. 13471,                 )
                                         )
          Defendants.                    )

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Rebolar, a minor, by and through his father and legal guardian Alejandro

Rebolar, has sued the City of Chicago and Chicago Police Officers Jeremiah Johnson, Tim

Hawkins and Tom Stack for violations of federal and state laws claiming, among other things,

that the defendant officers arrested him without probable cause and used excessive force in

placing him under arrest.[1]  All of plaintiff's claims arise out of events that occurred on

September 13, 2009 when plaintiff was taken into custody for at most ten to fifteen minutes as a

suspect in an auto burglary but immediately was released after the defendant officers

investigated and determined that plaintiff had not committed any crime.

---

[1] Plaintiff also sued Chicago Police Officers Criscione and Fleischhacker in his First Amended
Complaint, but plaintiff since has dismissed those officers as named defendants in this case. *See*
[Dkt.##29, 36].

Plaintiff's nine-count complaint asserts federal claims under 42 U.S.C. § 1983 for false arrest, unlawful search, excessive force, failure to intervene, and conspiracy and state law claims for battery, false imprisonment, intentional infliction of emotional distress, and respondeat superior and indemnification. This matter is before the Court on defendants' motion for summary judgment [Dkt.#70]. For the following reasons, the motion is granted as to all of plaintiff's claims.[2]

## I. BACKGROUND

### A. Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When resolving a motion for summary judgment, the Court construes all facts favorably to the non-moving party and makes reasonable inferences in that party's favor. *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 552 (7th Cir. 2011).

Further, as the United States Supreme Court has recognized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

---

[2] The parties consented to have a United States Magistrate Judge conduct any and all further proceedings in this case, including trial and entry of final judgment pursuant to 28 U.S.C. § 636(c). *See* [Dkt.##76,78].

trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations and footnote omitted), quoting FED. R. CIV. P 56(c). The Court's role "is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

**B.      Northern District of Illinois Local Rule 56.1**

The relevant background facts are derived from the parties' submissions pursuant to Local Rule 56.1, which governs summary judgment briefing in the Northern District of Illinois, and assists the Court in "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000); *see also* NORTHERN DISTRICT OF ILLINOIS LOCAL RULE ("L.R.") 56.1. "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojika v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012).

Local Rule 56.1(a)(3) requires the moving party to provide a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R.56.1(a)(3). The opposing party then must file "a concise response to the movant's statement," in which the nonmoving party must "admit or deny each factual statement proffered by the defendant . . ., and designate with specificity and particularity those material facts believed to establish a genuine dispute for trial." *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); L.R.56.1(b)(3)(A). The nonmoving party also may file a statement of additional facts that require the denial of summary judgment. L.R.56.1(b)(3)(B). The moving party may respond to each additional fact. L.R.56.1(a) "All material facts set forth in the statement filed pursuant to section (b)(3)(B) will be deemed admitted unless controverted by the [response] statement of the moving party." *Id.*; *see also Dimmitt & Owens Fin., Inc. v. Superior Sports Prods., Inc.*, 196 F. Supp. 2d 731, 737 (N.D. Ill. 2002).

## C.     Plaintiff Failed To Comply With Local Rule 56.1

The Seventh Circuit repeatedly has held that a district court is within its discretion to strictly enforce compliance with its local rules regarding summary judgment motions. *See Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009); *Bordelon*, 233 F.3d at 527. Plaintiff failed to comply with the requirements of Local Rule 56.1, and those failures have consequences as discussed herein.

In some instances, plaintiff's Local Rule 56.1(b)(3) responses contain significant problems. The following example illustrates a typical problem. Paragraph 13 in defendants' Local Rule 56.1(a)(3) statement of facts states: "At or around that time, a helicopter unit from

the City of Chicago dispatched over the radio to all patrol officers that a group of people were breaking into vehicles, directing the patrolling officers first to Tripp street, then East." Defs' L.R.56.1(a)(3) Statement of Facts (hereinafter referred to as "Defs' SOF") [Dkt.#71], at ¶13. Plaintiff responds without admitting or denying directly many of the facts put forth by defendants. Instead, plaintiff states as follows: "Plaintiff admits that *Officer Johnson states in his deposition testimony* that sometime on September 13, 2009, he received a call from a helicopter unit that a group of kids were breaking into vehicles. Plaintiff further admits that *according to Officer Johnson's testimony*, he did not know who was in the helicopter unit and he received no description as to age, race, and gender of the suspects or types of vehicles. Plaintiff admits Officer Johnson regarded the location as 'tricky' and he did not remember the exact location the unit specified, but that they ran south on Tripp and could not find any kids. Plaintiff further admits that *according to the Affidavit of Officer Tim Hawkins*, he received a report over a Chicago Police Helicopter of an auto burglary in progress and the initial location that was provided by the helicopter was later modified." Pl's L.R.56.1(b)(3) Response to Defendants' Statement of Facts (hereinafter referred to as "Pl's Resp. to Defs' SOF") [Dkt.#80], at ¶13 (internal citations omitted and emphasis added).

Local Rule 56.1 gives the opposing party the opportunity to either admit or deny each statement of fact put forward by the movant and to provide record support for either assertion. In this case, it often is impossible to tell from plaintiff's Local Rule 56.1(b)(3)(A) submission the facts plaintiff admits, denies or believes are in dispute. Plaintiff sometimes does unequivocally admit or deny a fact. In many other instances, however, plaintiff's responses do not specifically admit or dispute the statements of fact set forth by defendants. Instead of admitting or denying

defendants' asserted facts, plaintiff repeatedly limits his responses to an admission or statement as what the underlying testimony of a witness may be rather than admitting or denying the substance of the fact itself. Other times, plaintiff admits only that a witness has testified to a fact. *See e.g.*, Pl's Resp. to Defs' SOF [Dkt.#86], at ¶13 ("Plaintiff admits that Officer Johnson states in his deposition testimony that sometime on September 13, 2009, he received a call from a helicopter unit . . . .").

Plaintiff's ambiguous responses in this vein are insufficient to create a material issue of fact, or to allow the Court to determine whether a fact truly is disputed, and therefore must be taken as admissions under Local Rule 56.1(b)(3)(C) that defendants' proposed facts are true. Local Rule 56.1 statements that evade or improperly deny or otherwise respond to facts asserted by the opposing party defeat the point of Local Rule 56.1, which is to identify precisely which facts are actually in dispute. *Bordelon*, 233 F.3d at 528 (holding that the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted"). Plaintiff's failure to properly admit or deny certain statements of facts in defendants' statement of material facts, however, does not result in an automatic grant of summary judgment in defendants' favor. The Court still must evaluate all facts in the light most favorable to plaintiff, the nonmoving party. *O'Donnell v. City of Chicago*, 2003 WL 22339285, at *1 (N.D. Ill. 2003).

In addition, at oral argument, counsel for plaintiff referred to and cited for the first time testimony from the deposition of Tactical Flight Officer Anthony Bansley, a witness deposed in this case. None of these references can be found in plaintiff's Local Rule 56.1(b)(3) Response to Defendants' Statement Facts. In addition, the argument raised by plaintiff's counsel during oral

argument was not raised in his legal memorandum of law in opposition to defendants' motion for summary judgment. To the extent that plaintiff has attempted to introduce additional facts at oral argument not previously cited in plaintiff's Local Rule 56.1 statement of facts nor discussed in his legal brief, these facts have not been subject to the opposing side's scrutiny nor properly presented to the Court for review.

As the Seventh Circuit has stressed, facts are to be set forth in Local Rule 56.1 statements, and it is not the role of the Court to parse the parties' exhibits to construct the facts. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). It simply is not the Court's job to sift through the record to find evidence to support or refute a party's claim. *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006). Plaintiff had all the facts available to him at the time that he filed his Local Rule 56.1(b)(3)(B) statement in response to defendants' statement of facts, and plaintiff will not be permitted to inject additional facts into the record after the motions have been fully briefed. *See Cutler v. Quality Terminal Services, LLC*, 2012 WL 669052, at *2 (N.D. Ill. 2012). Therefore, the Court need not consider those new facts in ruling on defendants' motion for summary judgment. *See Quality Oil Inc. v. Kelley Partners, Inc.*, 657 F.3d 609, 614-15 (7th Cir. 2011) (citation omitted) (holding that arguments raised for the first time at oral argument and not raised in briefs are waived).[3]

Finally, defendants did not submit any response to plaintiff's Local Rule 56.1(b)(3)(B) statement of additional facts. Therefore, plaintiff's additional facts are deemed admitted to the

---

[3] While the Court need not consider the testimony of Officer Bansley for these reasons, even if the Court were inclined to do so, it disagrees with Plaintiff's characterization of Officer Bansley's testimony and its significance as explained *infra* at Section III.A.

extent they are supported by cites to the record. L.R.56.1(a); *Dimmett & Owens Fin., Inc.*, 196 F.

Supp. 2d at 737. This Court, however, previously granted defendants' motion to strike plaintiff's

Exhibit A, which was submitted in conjunction with plaintiff's response to defendants' statement

of facts, and also denied plaintiff's motion for leave to amend plaintiff's response to defendants'

statement of facts. *See* [Dkt.#95]. Therefore, any of plaintiff's additional statements of fact that

cite to Exhibit A as sole support for that response are stricken.

## II. RELEVANT FACTS

The events in question occurred on September 13, 2009 in the vicinity of the Mexican

Independence Day Parade in Chicago. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶3. Defendant

Officers Johnson, Hawkins and Stack were assigned to a special detail to police the area and

provide security during the parade. *Id.* at ¶¶4, 5. Tactical Flight Officer Anthony Bansley was

assigned to a Chicago police department helicopter unit to oversee the Mexican Independence

Day Parade from the sky for, *inter alia*, possible burglaries. *Id.* at 14. Plaintiff David Rebolar

was twelve years old on September 16, 2009.[4] *Id.* at ¶2.

On the day of the parade, plaintiff attended church and then, after the church service,

went to his father's car, which was parked in the parking lot next to the church, to change clothes

so he could play soccer with his friends. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶¶6, 8. Plaintiff

admits that his father's gray Chevy Traverse was parked in the parking spot closest to the alley.

*Id.* at ¶8. Around that same time, the Chicago police department helicopter unit issued a radio

dispatch to all patrol officers that a group of kids was breaking into vehicles. *Id.* at ¶¶13, 14.

---

[4] Officer Johnson testified that when he first encountered plaintiff he thought plaintiff was at least 16 years old. Def's SOF [Dkt.#71], at ¶2. Plaintiff's father admits that he has been told that his son looks old for his age, but plaintiff's father also states that when plaintiff was twelve he still looked like a kid. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶2.

Officer Bansley communicated with the patrol officers on the ground to direct them to the vehicle in question. *Id.* at ¶16. From the helicopter, Officer Bansley confirmed that Officer Hawkins was responding to the specific vehicle Officer Bansley had identified as a possible subject of an auto burglary.[5] *Id.*

Officer Hawkins observed plaintiff exiting the back passenger door of the SUV identified by Officer Bansley, pointed his gun at plaintiff and requested confirmation from the police officer in the helicopter unit that plaintiff was a suspect for the burglary in progress. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶¶12, 15, 17. Plaintiff admits that he overheard someone asking on the radio, "Is this him in the white shirt?" and that plaintiff was in fact wearing a white shirt. *Id.* at ¶22. At his deposition, plaintiff stated he did not hear a response to the question. *Id.* However, plaintiff's father testified at his deposition that plaintiff told his father he heard someone on the radio say "That's the guy." *Id.* at ¶23. In responding to the radio call about possible auto burglaries in progress, Officers Hawkins and Johnson believed plaintiff was identified by the helicopter unit as one of the suspects. *Id.* at ¶¶16, 17.

With their guns pointed at plaintiff, Officers Hawkins and Johnson yelled at plaintiff to show his hands on at least two occasions, but plaintiff did not raise his hands. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶¶20, 21. Neither Officer Johnson nor Officer Hawkins could see plaintiff's hands. *Id.* at ¶21. According to plaintiff, another uniformed officer then came from the alley, walking fast or running toward him with a black stick raised in the air, grabbed plaintiff by his arms and pushed him against plastic garbage cans. *Id.* at ¶24. Officer Johnson then grabbed

---

[5] *See* Defs' SOF Ex. F [Dkt.#84], at 41:1-5 ("Q: Did you describe any of the vehicles that they were trying to get into? A: When the officers got on the scene, I pointed out the specific vehicle in question, the exact vehicle.").

plaintiff's hands and placed handcuffs on him. *Id.* at ¶25. Plaintiff says that he had the keys to his father's car in his hands when the officers' guns were pointed at him but that he dropped the keys while he was being handcuffed. *Id.* at ¶¶26, 37(c). There is testimony from another witness, Ezequiel Zunun, however, that plaintiff had keys in his hand while he was being handcuffed and then plaintiff threw them to the ground after he was handcuffed. Pl's Statement of Add'l Facts [Dkt.#80], at ¶¶9, 10.

Once plaintiff was placed in handcuffs, it is undisputed that the officers no longer pointed their guns at him. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶27. Plaintiff states that Officer Johnson bumped into plaintiff while he was being handcuffed which caused plaintiff to trip, and plaintiff and Officer Johnson to bump into some plastic garbage cans close by, but that Officer Johnson held plaintiff so that he would not fall. *Id.* at ¶¶28, 29. Plaintiff says that he was pushed against the plastic garbage cans when his hands were placed in handcuffs but that the defendant officers did not touch any other part of his body other than grabbing his arms to handcuff them behind his back. *Id.* at ¶¶30, 41.

Once plaintiff was handcuffed, Officers Johnson and Hawkins asked him questions but plaintiff did not respond to the questions. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶¶31, 32. Plaintiff does not remember the officers asking him any questions before or during the time he was being handcuffed. *Id.* at ¶32. Plaintiff states that he did ask the officers about what he did at least twice and that he told the officers it was his father's car but no one responded to him. *Id.* at ¶¶32, 37(a). Plaintiff also states that he told the officers that the keys were behind the garbage cans. *Id.* at ¶37(b).

Plaintiff was handcuffed and detained for further investigation because of the helicopter unit's report of auto burglaries in progress and because he was observed exiting the car identified by Officer Bansley as the subject of a possible auto burglary. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶¶16, 33. Plaintiff was not searched by Officer Johnson or Officer Hawkins, but Officer Johnson did do a pat down on the outside of plaintiff's clothing while he was in handcuffs. *Id.* at ¶40. Plaintiff does not remember the officers going through his pockets or checking the pockets though his pants. *Id.* at ¶39. The defendant officers never entered or searched the SUV. *Id.* at ¶40. Plaintiff never was charged or formally arrested, and plaintiff admits that no one told him he was under arrest. *Id.* at ¶33. Plaintiff never was placed in a police car or taken to the police station. *Id.* at ¶38.

At his deposition, plaintiff testified that he had pain from the handcuffs, but he admitted that he never told the officers that the handcuffs were too tight. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶42. Plaintiff states that he had red marks on his wrists but that he did not show them to anyone, including the defendant officers or his father, and that he never saw any doctors because of the pain. *Id.* at ¶45. However, plaintiff's father said he saw red marks on his son's wrists and took him to Lawndale Clinic for the pain. *Id.* Plaintiff also testified at his deposition that he was scared and crying because a gun was pointed at him and he thought he was going to be hit with a stick, but plaintiff does not remember seeing any counselors after this incident. *Id.* at ¶46. However, plaintiff's father testified at his deposition that he took plaintiff to Lawndale Clinic for the nightmares he was having about the incident. *Id.*; *see also* Pl's Additional Facts [Dkt.#80], at ¶50. Plaintiff has not submitted any medical records or bills for the wrist pain he allegedly sustained. *Id.* at ¶58.

Plaintiff's father testified at his deposition that fifteen minutes after he had given his son the keys to the car, he heard from fellow church members that his son was handcuffed with a gun to his head. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶49. Plaintiff's father testified that he saw his son on the ground with an officer's knee on his back although plaintiff denies he was on the ground in that position. *Id.* at ¶50. When plaintiff's father arrived at the scene, he told the officers that the vehicle in question was his car. *Id.* at ¶53. After confirming that the keys belonged to the vehicle in question and that the vehicle belonged to plaintiff's father, the officers took the handcuffs off of plaintiff within two minutes and released plaintiff to his father. *Id.* at ¶53. Plaintiff told his father that he was in handcuffs for about five minutes. *Id.* at ¶54. Plaintiff's father was told by his friends on the scene that plaintiff was handcuffed for about ten minutes. *Id.*

Plaintiff's father testified that he never saw his son pushed or fall to the ground, nor did he see any officer hit his son, but that his son told him that he was pushed against the garbage cans. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶56. Plaintiff's father states that, in his opinion, his son did not tell the truth about being pushed and falling to the ground and never being on the ground at his deposition because he was scared of the police. *Id.* at ¶57.

There also is testimony from three other witnesses, including Manuel Viramontes, Marco Salgado and Ezequiel Zunun. Manual Viramontes testified that he walked up to the scene only after plaintiff had been placed in handcuffs and that plaintiff was standing up and crying. Pl's Resp. to Defs' SOF [Dkt.#80], at ¶60. Viramontes testified that he did not see the officers touch, push, hit, or point a gun at plaintiff. *Id.* at ¶62. Marcus Salgado testified that he saw plaintiff in handcuffs and that he was shaking, but Saldago does not remember seeing a gun pointed at

plaintiff. *Id.* at ¶63. Eziquiel Zunun testified that he saw plaintiff running away from the officers who were telling plaintiff not to run, to stop and put his hands up. *Id.* at ¶67. Zunun testified that he did not see the officers have any physical contact with plaintiff other than pointing a gun at him and grabbing his hands to put handcuffs on him and searching him. *Id.* at ¶69.

## III. ANALYSIS

Title 42 U.S.C. § 1983 "creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997), quoting *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Section 1983 does not create substantive rights; rather, "it is a means for vindicating federal rights conferred elsewhere." *Id.* In Section 1983 cases, "the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010); *see also Celotex v. Catrett*, 477 U.S. 317, 322 (1986) ("[Federal Rule of Civil Procedure 56] mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

In their motion for summary judgment, defendants argue that the defendant officers are entitled to summary judgment because: (1) the defendant officers had probable cause to arrest, search and detain plaintiff; (2) the defendant officers did not use excessive force when they detained plaintiff; and (3) the defendant officers are entitled to qualified immunity. Defs' Joint

Motion and Memorandum of Law in Support of their Motion for Summary Judgment (hereinafter "Defs' Motion") [Dkt.#70], at 4-11.

## A. Defendant Officers Had Probable Cause To Detain, Arrest And Search Plaintiff As A Matter Of Law

Plaintiff has sued Chicago Police Officers Johnson, Hawkins and Stack for false arrest and unreasonable search and seizure pursuant to 42 U.S.C. § 1983, alleging that the defendant officers seized, arrested and searched him without a warrant and probable cause in violation of his Fourth and Fourteenth Amendment rights. First Am. Compl. [Dkt.#27], at ¶¶15, 20. Plaintiff argues that there are disputed facts as to whether the defendant officers had probable cause to arrest plaintiff, and therefore, the issue should go to the jury. Pl's Memorandum of Law in Opposition to Defs' Motion for Summary Judgment (hereinafter "Pl's Opposition") [Dkt.#79], at 3-5.

To succeed on a claim under Section 1983 against the officers, a plaintiff must show that a person acting under color of state law deprived him of a right, privilege, or immunity secured either by the Constitution or federal law. *See, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). Defendants do not dispute that they were acting under color of state law at the time they detained plaintiff. Rather, they argue that they had probable cause to arrest plaintiff or, in the alternative, that they are entitled to qualified immunity.

As a threshold matter, the parties disagree as to whether plaintiff was, in fact, arrested. Pl's Opposition [Dkt.#79], at 4-5. Plaintiff argues that he was arrested. In his response to defendants' Local Rule 56.1 statement of facts, however, plaintiff admits that no one ever told him he was under arrest. *See* Pl's Resp. to Defs' SOF [Dkt.#80], at ¶33. Defendants argue that

plaintiff was not arrested but rather was handcuffed and detained for a short period of time and then released after the defendant officers further investigated the situation.

The Court highly doubts that plaintiff was arrested in this case. The Seventh Circuit has recognized that even "using handcuffs, placing suspects in police cars, drawing weapons, and other measures of force more traditionally associated with arrests may be proper during an investigatory detention, depending on the circumstances." *United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011). It is not disputed in this case that plaintiff was detained for no more than ten to fifteen minutes, that the defendant officers' guns were drawn for only a short period of time until plaintiff was handcuffed, and that plaintiff never was placed in a police car nor was he transported to the police station. Significantly, plaintiff also admits that no one ever told him he was arrested. Based on the facts presented, it seems clear that plaintiff was not arrested. However, the Court will give plaintiff the benefit of any doubt and assume for the purpose of this motion that he was arrested and determine whether the defendant officers had probable cause to arrest him.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006), citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Id.*, citing *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993). Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonable trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed" a crime. *Kelley v. Myler*,

149 F.3d 641, 646 (7th Cir. 1998). The Court evaluates probable cause by applying an objective standard — whether a reasonable officer would have believed the person had committed a crime. If the test is satisfied, "the arrest is lawful even if the belief would have been mistaken." *Id.* at 646. Thus, probable cause has been described as a zone within which reasonable mistakes will be excused. *Id.*

The inquiry into whether the police had probable cause is an objective one focusing on the facts known to the officer at the time of arrest. *Graham v. Connor*, 490 U.S. 386, 398 (1989); *Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010). The determination of probable cause is not based upon "the facts as an omniscient observer would perceive them," but instead is determined by the facts "as they would have appeared to a reasonable person in the position of the arresting officer." *Mustafa*, 442 F.3d at 547. It is a "practical, common sense determination." *Sornherger v. City of Knoxville*, 434 F.3d 1006, 1013 (7th Cir. 2006).

When the underlying facts supporting probable cause are not in dispute, a court may decide whether probable cause exists. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009), citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993). Once probable cause relating to an offense is established, all Section 1983 liability against the arresting officer is barred, "even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007), citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Pourghoraishi v. Flying J. Inc.*, 449 F.3d 751, 762 (7th Cir. 2006). Thus, as long as an officer has probable cause to believe that an individual "has committed even a very minor criminal offense in his presence," the officer may

arrest the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

In this case, the defendant officers received a radio call of an auto burglary in progress being witnessed by Officer Bansley from a police helicopter. They were given a location by Officer Bansley and went to that location. Officer Bansley specifically identified the vehicle in question, and plaintiff was observed exiting that vehicle. After being alerted to the auto burglary in progress, Officer Hawkins observed plaintiff exit the vehicle in question, and the defendant officers determined that a crime appeared to be occurring.

For the first time at oral argument, plaintiff's counsel argued that the defendant officers did not have probable cause to arrest plaintiff because Officer Bansley never specifically identified plaintiff as the suspect. In making this new argument, plaintiff's counsel cited and relied upon facts not cited in either his Local Rule 56.1(b)(3) response to defendants' statement of facts or in his Local Rule 56.1(b)(3)(C) statement of additional facts even though these "new" facts were available to him when he responded to defendants' statement of facts and submitted his brief in opposition to defendants' motion for summary judgment.

Plaintiff argued at oral argument that these additional facts create material issues of disputed facts that prevent summary judgment. Plaintiff attempts to create a disputed issue of fact by arguing that Officer Bansley never identified plaintiff as the suspect in question, and therefore, the defendant officers did not have probable cause to arrest plaintiff. This argument, however, is not persuasive. It is not disputed that the defendant officers found the vehicle that Officer Bansley identified as the subject of a possible auto burglary in progress and that, when

the officers approached the vehicle specifically identified by Officer Bansley, they saw plaintiff exiting the vehicle.

The Court disagrees with plaintiff's characterization of the underlying testimony. It is clear from Officer Bansley's deposition that he does not recall if any of the patrol officers asked him to identify plaintiff. Defs' SOF Ex. F [Dkt.#84], at 46:19-14 and 47:1-14. As the Seventh Circuit has explained, a statement that a witness does not remember is not enough to put that fact into dispute at summary judgment. *See Glover v. Sitel Corp.*, 2010 WL 2429714, at *1 (W.D. Ill. 2010), citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002). More important, however, is what clearly is not in dispute — that the defendant officers found the vehicle that Officer Bansley identified from the helicopter as the possible subject of an auto burglary (Defs' SOF Ex. F [Dkt.#84], at 53:11-15) and that, when the officers approached that vehicle, an individual (plaintiff) got out of the vehicle (Defs' SOF Ex. F [Dkt.#84], at 53:22-24 and 54:1-6).

Given the undisputed facts, a reasonable person in the position of the arresting officers would have believed that plaintiff could have been in the process of committing a crime even though the officers were later proved to be mistaken. The defendant officers reasonably approached plaintiff with their guns raised. It is not disputed that the defendant officers could not see plaintiff's hands and ordered plaintiff more than once to show his hands. Plaintiff did not do so. Without any response from plaintiff, the defendant officers restrained plaintiff and ultimately placed him in handcuffs.

While plaintiff says that he did not have the keys to his father's car in his hands and that he dropped the keys when he was being placed in handcuffs, there is testimony from another

witness, Ezequiel Zunun, that plaintiff had the keys to his father's car in his hand while he was being handcuffed and then plaintiff threw them to the ground after he was handcuffed. Even if this testimony creates a dispute as to whether plaintiff had keys in his hand when he was being handcuffed, it is not a material fact dispute. Whether plaintiff dropped the keys before being handcuffed, had the keys in his hand while he was being placed in handcuffs or threw the keys to the ground after he was handcuffed is not material and does not detract from a finding of probable cause in this case.

Significantly, there is no evidence that the defendant police officers ever saw keys in plaintiff's hands or on the ground while they were placing plaintiff in handcuffs. It is undisputed that the defendant officers could not see plaintiff's hands when they encountered him as he exited the car identified as the possible subject of a burglary, and that plaintiff did not raise his hands when the officers directed him to do so. Even if the officers had seen keys in plaintiff's hand or on the ground, there is no evidence that they should have realized then, without further investigation, that those were the keys to the vehicle in question and the keys were lawfully in plaintiff's possession.

Once an officer has probable cause to arrest an individual, he need not continue to investigate or seek out exculpatory evidence. *Matthews v. City of East St. Louis*, 675 F.3d 703, 707 (7th Cir. 2012); *see also Sow v. Fortville Police Dept.*, 636 F.3d 293, 302 (7th Cir. 2011). The Court recognizes that probable cause is based on the totality of the circumstances and that "exculpatory evidence is also relevant." *Cervantes v. Jones*, 188 F.3d 805, 813 (7th Cir. 1999), overruled on other ground *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001). However, "[w]hile an officer may not close his or her eyes to clearly exculpatory facts, the Fourth

Amendment does not require an officer with probable cause to arrest to wait while pursuing further investigation." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 625 (7th Cir. 2010).

In this case, the defendant police officer received information from a fellow police officer on which, without question, the defendant officers were entitled to reasonably rely, and therefore, the defendant officers objectively had probable cause to effectuate an arrest. It is clear to the Court that the defendant officers had probable cause to detain or arrest plaintiff. It is undisputed that plaintiff was in handcuffs for a short period of time — at most five to ten minutes — while the defendant officers investigated what they had been told by a fellow police officer was an auto burglary in progress. After plaintiff was handcuffed, the officers continued their investigation and in short order confirmed that the vehicle he was seen exiting belonged to plaintiff's father and that plaintiff had permission to be in the vehicle. Once the defendant officers confirmed plaintiff had not committed any crime, plaintiff immediately was released from custody.

After the fact, it is clear that plaintiff, very unfortunately, was in the wrong place at the wrong time on September 13, 2009. The undisputed facts, however, taken in the light most favorable to plaintiff demonstrate as a matter of law that the defendant officers had probable cause to arrest plaintiff and that the defendant officers' conduct was objectively reasonable under the circumstances. Therefore, plaintiff's claims of false arrest and unreasonable search and seizure do not survive as a matter of law, and defendants' motion for summary judgment is granted as to Counts I and II of plaintiff's First Amended Complaint.

**B.      Defendant Officers Did Not Use Excessive Force When They Arrested Plaintiff**

Plaintiff also has asserted a claim of excessive force under 42 U.S.C. § 1983, alleging that the defendant officers subjected plaintiff to excessive force when they arrested him. First Am. Compl. [Dkt.#27], at ¶24. Plaintiff's excessive force claim is based upon the defendant officers pointing their guns at him before he was handcuffed, his being pushed against plastic garbage cans when he was put into handcuffs, his discomfort while in handcuffs for up to ten minutes and possibly a claim of being pushed but not falling to the ground while being handcuffed. Plaintiff argues that the evidence establishes genuine issues of material facts that the defendant officers used excessive force when they took plaintiff into custody. Pl's Opposition [Dkt.#79], at 5-6. The Court disagrees.

A police officer's ability to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Nonetheless, the Fourth Amendment prohibits the use of excessive force during the execution of a seizure, and a claim that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure must be evaluated according to the Fourth Amendment's reasonableness standard. *Id.* at 395.

"Law enforcement is a difficult job, as 'police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving.'" *Baird v. Renbarger*, 576 F.3d 340, 342 (7th Cir. 2009), quoting *Graham*, 490 U.S. at 397. Therefore, the "reasonableness" of the use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and the officer's subjective good or bad intentions do not enter into the analysis. *Graham*, 490 U.S. at 396-97. Instead, the factors that a

court must consider are: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court also should consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. *See McDonald v. Haskins*, 966 F.2d 292, 292–93 (7th Cir. 1992). In the end, the excessive force inquiry "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed — to the community or to the arresting officers — if left unattended." *Id.* at 294, citing *Wilkins v. May*, 872 F.2d 190, 193 (7th Cir. 1989).

Plaintiff relies on *Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000), and *Baird v. Renbarger*, 576 F.3d 340 (7th Cir. 2009), to support his claim that the officers pointing their guns at him amounted to excessive force. Pl's Opposition [Dkt.#79], at 5-6. In *Jacobs*, the plaintiff brought a claim for excessive force against defendant officers for an allegedly illegal search of his home. 215 F.3d at 763. The evidence established that a defendant officer continued to point a gun at the plaintiff even after ascertaining that the plaintiff was not the person he was looking for, and during which time the plaintiff did nothing more threatening than give the officer his identification and ask permission to sit down. *Id.* at 773. The Seventh Circuit held that the officer's use of force against the plaintiff while executing an allegedly illegal search of his home and an unlawful seizure of his person was out of proportion to any danger the plaintiff could have posed to the officers or any other member of the community. *Id.* at 774. In *Baird*, the defendants held a 9-millimeter submachine gun on a plaintiff for two hours when it was clear that there was no sign of danger. 576 F.3d at 343.

The facts in this case are clearly distinguishable from *Jacobs* and *Baird*. In this case, the defendant police officers pointed a gun at plaintiff when they first encountered him and holstered their guns as soon as plaintiff's hands were placed in handcuffs. It is not disputed that the defendant officers ordered plaintiff to show his hands and that plaintiff did not immediately do so, and the defendant officers kept their guns pointed at plaintiff until he was restrained. Once plaintiff was in custody and being placed in handcuffs, it is undisputed that the officers holstered their guns and did not continue to point them at plaintiff. The defendant officers' guns were pointed at plaintiff for less than five minutes, if even for that long. These facts are not sufficient as a matter of law to establish that excessive force was used when plaintiff was detained and taken into custody.

Plaintiff also argues that the defendant officers used excessive force because his handcuffs were too tight. Pl's Opposition [Dkt.#79], at 6-7. Again, the Court concludes that the facts identified by plaintiff are not sufficient to establish a genuine issue of material fact that excessive force was used when plaintiff was taken into custody. In *Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), a plaintiff complained that his handcuffs were too tight twice, once during the ride to the police station and once to an unknown officer at the police station. 469 F.3d at 663. In *Tibbs*, the officers removed the handcuffs approximately 25 minutes after the plaintiff arrived at the police station; the plaintiff's wrists were red for approximately one-and-a-half days; and the plaintiff received no medical care for wrist pain. *Id.* at 663. The Seventh Circuit concluded that, given such "mild allegations," no reasonable jury could find that the arresting officer's actions were objectively unreasonable. *Id.* at 666.

In *Tibbs*, the plaintiff based his excessive use of force claim entirely on his allegations that he complained to the defendant officer that his handcuffs were too tight and that the officer refused to loosen them. That is not the case here. Plaintiff in this case never complained to the defendant officers that his handcuffs were too tight. The undisputed facts taken in light most favorable to plaintiff here indicate that plaintiff suffered some discomfort and pain from handcuffs that may have been applied too tightly but never complained about it; that plaintiff was handcuffed for no more than ten minutes; that he experienced redness on his wrists for a short period of time; and that he may have sought medical care for an alleged wrist injury but there is no record of his having done so. Plaintiff cites no cases in which any court has permitted a plaintiff to go to trial based on such allegations.[6]

Finally, to the extent that plaintiff argues that the conduct of the defendant officers constitutes excessive force because plaintiff was pushed against plastic garbage cans while he

---

[6] On occasion, the Seventh Circuit has recognized valid excessive force claims based on overly tight handcuffs. In *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003), there was evidence that the arresting officers handcuffed the plaintiff so tightly she lost feeling in her hands and refused to loosen the cuffs when she told them of the numbness. *Id.* at 774–75, 781. The plaintiff later underwent two carpal tunnel surgeries she said were necessitated by the handcuffing, and the Seventh Circuit held summary judgment under these circumstances was inappropriate. *Id.* at 775, 780–81. In another case, *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir. 2002), the Seventh Circuit held the plaintiff was entitled to a jury trial on her excessive force claim when she produced evidence that the arresting officer lacked probable cause for the arrest, shoved her to the ground even though she was not resisting, cracked her tooth by forcing a breath-screening device into her mouth, waited over an hour to loosen handcuffs she complained were too tight, and subjected her to blood and urine testing at a hospital, even though she had passed all field sobriety tests and had registered a 0.00 Breathalyzer reading. *Id.* at 1043–44. Plaintiff does not cite these cases. At any rate, none is analogous to his allegations. Arguably plaintiff may have experienced tight handcuffs akin to the discomfort or pain the plaintiffs in *Herzog* and *Lester* experienced. Plaintiff, however, did not complain about any pain or discomfort. In addition, the decisions in these cases hardly were based on overly tight handcuffs alone. The plaintiffs in *Herzog* and *Lester* presented evidence they had suffered numerous additional injuries, including a cracked tooth, plainly gratuitous blood and urine testing, being kneed in the back, and being dragged down a hallway. *Herzog*, 309 F.3d at 1043–44; *Lester*, 830 F.2d at 714. These additional allegations in those cases clearly factored in to the Court's excessive force analysis.

was handcuffed (though did not fall and instead was caught and held-upright by one of the officers so he would not fall), or because plaintiff was treated in an abrasive manner and was trembling, crying and afraid, the Court disagrees that such conduct amounts to use of excessive force. Pl's Opposition [Dkt.#79], at 6-7. The evidence shows that plaintiff may have been pushed into some plastic garbage cans, or that plaintiff tripped and he and one of the officers fell into some garbage cans when the officer was trying to restrain plaintiff. The right to make an arrest necessarily carries with it the right to use some degree of physical coercion to effect it. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Graham*, 490 U.S. at 396 (internal quotation and citation omitted).

Plaintiff acknowledges that an officer held him to prevent him from falling to the ground. Plaintiff also acknowledges that the defendant officers did not have any other physical contact with him other than grabbing his arms to handcuff them behind his back. Such contact and force is *de minimis* and is not sufficient as a matter of law to establish that the defendant officers used excessive force when plaintiff was taken into custody.

In summary, the record before the Court simply is devoid of any evidence establishing that the defendant officers used excessive force against plaintiff. To the contrary, the undisputed facts reveal that the defendant officers used minimal force when taking plaintiff into custody and did not exert any amount of force that was greater than reasonably necessary to detain plaintiff. Although plaintiff may have been scared and even traumatized because the officers pointed their guns at him after he exited his father's car and before he was handcuffed, these circumstances do not amount to a constitutional violation as a matter of law.

As the Seventh Circuit recognized in *Tibbs*, "[i]n a perfect world police officers would make no errors and innocent citizens like [plaintiff] would never be arrested and detained. [Plaintiff's] mistaken arrest was unfortunate and the inconvenience and indignity he suffered was regrettable. But [the defendant officers'] actions did not violate [the plaintiff's] Fourth Amendment rights." 469 F.3d at 665-66. Similarly, this Court concludes that no reasonable jury could find that defendant officers' actions in this case were objectively unreasonable, and the undisputed facts show as a matter of law that the defendant officers did not use excessive force when they detained plaintiff and took him into custody. Therefore, defendants' motion for summary judgment is granted as to Count III of his First Amended Complaint.

## C.   Even If The Defendant Officers Did Not Have Probable Cause To Arrest Plaintiff, They Have Qualified Immunity

Defendants also argue that the officers are entitled to qualified immunity.[7] Defs' Motion [Dkt.#70], at 10-12. The question of whether the defendant officers actually had probable cause to detain or arrest plaintiff is separate from the question relating to qualified immunity for the defendant officers. "Qualified immunity protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known." *Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009) (citations omitted).

There is no question that plaintiff's constitutional right to be free from arrest without probable cause was clearly established at the time of the incident. *See Humphrey v. Staszak,* 148

---

[7] The Court notes for the record that plaintiff failed to respond to defendants' argument on qualified immunity and therefore has waived any argument before this Court and in any potential appeal that the defendant officers are not entitled to qualified immunity. *See Quality Oil, Inc. v. Kelley Partners, Inc.*, 657 F.3d 609, 614-15; *Keck Garrett & Assocs., Inc. v. Nextel Communications, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008), quoting *Boyers v. Texaco Ref. & Mktg., Inc.*, 848 F.2d 809, 811–12 (7th Cir.1988) ("It is axiomatic that issues and arguments which were not raised before the district court cannot be raised for the first time on appeal.").

F.3d 719, 725 (7th Cir. 1998), citing *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Yet a "corresponding doctrine of qualified immunity for police officers has also long been recognized." *Id.*, citing *Pierson v. Ray*, 386 U.S. 547, 555-58 (1967). That corresponding doctrine provides that a defendant is entitled to qualified immunity in a false arrest case when, if there is no probable cause, "a reasonable officer could have mistakenly believed that probable cause existed." *Id.* (citations omitted). Thus, as long as a defendant officer reasonably, albeit possibly mistakenly, believed that probable cause existed to arrest a plaintiff, then the defendant officer is entitled to qualified immunity. *Id.* This standard is often dubbed "arguable probable cause." *Id.* (citations omitted). Arguable probable cause is established "when 'a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law.'" *Id.*, quoting *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997).

Because the Court has found that the defendant officers had probable cause to detain and arrest plaintiff in this case and that no constitutional violations occurred, an analysis of "arguable probable cause" and a decision based on qualified immunity is not necessary to resolve the case. However, even if this Court determined that there were disputed issues of fact as to the issue of probable cause that would prevent the granting of defendants' summary judgment motion, the defendant officers at the very least would be entitled to qualified immunity for the reasons discussed above. Police officers in the same circumstances and with the same knowledge as these officers reasonably could have believed that probable cause existed in light of well-established law. *See supra* Section III.A.

Police officers require the protection of qualified immunity to shield them from undue interference with their duties. *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). A review of the evidence in this case demonstrates that, even if defendants officers did not have actual probable cause, at the very least they had "arguable" probable cause to arrest plaintiff given facts known to them at the time plaintiff was taken into custody.

**D.** **Counts IV And V Are Dismissed Because Plaintiff Cannot Establish An Underlying Constitutional Deprivation Of Rights**

In Count IV of his First Amended Complaint, plaintiff alleges a claim for failure to intervene and in Count V a conspiracy claim. First Am. Compl. [Dkt.#27], at ¶¶28-39. To establish a civil conspiracy claim under Section 1983, plaintiff must show that defendants agreed to deprive him of his constitutional rights. *See Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007); *see also Redwood v. Dobson*, 476 F.3d 462, 466 (7th Cir. 2007) ("The minimum ingredient of a conspiracy [ ] is an agreement to commit some future unlawful act in pursuit of a joint objective."). A claim for conspiracy, however, "is not an independent basis of liability in § 1983 actions." *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). As such, if a plaintiff fails to prove an underlying constitutional injury, any attendant conspiracy claim necessarily fails. *See Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). Similarly, an underlying constitutional violation is required for a failure to intervene. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005).

Because the Court has found that the defendant officers had probable cause to take plaintiff into custody, that the defendant officers did not use excessive force when they detained plaintiff such that defendants are entitled to summary judgment on those claims, plaintiff's attendant claims for failure to intervene and conspiracy also fail because there is no underlying

constitutional deprivation of plaintiff's rights to form the basis for liability under Section 1983

for either a failure to intervene or conspiracy claim. *Id.* Therefore, defendants are entitled to

summary judgment on Counts IV and V of plaintiff's First Amended Complaint.

**E.      The *Monell* Claims Against The City Of Chicago Are Dismissed As A Matter Of Law**

To the extent that plaintiff also alleges *Monell* claims against defendant City of Chicago,

a municipality is not liable under Section 1983 unless the plaintiff can demonstrate that a

constitutional deprivation occurred as a result of a city policy or custom. *Monell v. Dep't of Soc.

Servs.*, 436 U.S. 658, 691 (1978). As a threshold matter, boilerplate allegations of the existence

of a municipal policy without any factual support are insufficient. *Sivard v. Pulaski City*, 17 F.3d

185, 188 (7th Cir. 1994). In addition, to the extent plaintiff asserts *Monell* claims of liability

against defendant City of Chicago, those claims are dismissed as well because a *Monell* claim

depends entirely on the validity of the underlying constitutional violations. *Bielanski v. County

of Kane*, 550 F.3d 632, 645 (7th Cir. 2008); *Jenkins v. Bartlett*, 487 F. 3d 482, 492 (7th Cir.

2001) ("[T]here can be no liability under *Monell* for failure to train when there has been no

violation of the plaintiff's constitutional rights."); *Windle v. City of Marion, Ind.*, 321 F.3d 658,

663 (7th Cir. 2003) ("[A] plaintiff must prove that the individual officers are liable on the

underlying substantive claim in order to recover damages from a municipality under [a theory of]

. . . failure to train.").

**F.      The State Law Claims Also Are Dismissed As A Matter Of Law**

Plaintiff also alleges state law claims against defendants for battery (Count I [sic]), false

imprisonment (Count VI [sic]), intentional infliction of emotional distress (Count VIII), and

respondeat superior and indemnification (Count IX).[8]  First Am. Compl. [Dkt.#27], at ¶¶40-56.

The usual practice of courts is to relinquish jurisdiction over state supplemental claims when all

federal claims have been dismissed prior to trial. *Wright v. Associated Ins. Companies, Inc.*, 29

F.3d 1244, 1251 (7th Cir. 1994).  However, when "it is absolutely clear how the pendent claims

can be decided," the court may retain jurisdiction over the state law claims. *Id.* at 1251.

### 1. False Imprisonment

Under Illinois law, probable cause is an absolute bar to a claim for false imprisonment.

*Jones v. Webb*, 45 F.3d 178, 1783 (7th Cir.1995); *see also Lappin v. Costello*, 232 Ill .App. 3d

1033, 598 N.E.2d 311, 317 (Ill. App. 4th Dist.1992) ("If probable cause existed for the arrest, an

action for false arrest cannot lie."); *Martel Enterprises v. City of Chicago*, 223 Ill. App. 3d 1028,

584 N.E.2d 157, 161 (Ill. App. 1st Dist.1991) (probable cause is an absolute bar to a claim of

false imprisonment).  Because the Court already has determined that probable cause existed for

the defendant officers' actions, and because probable cause is a bar to plaintiff's state law claim

of false imprisonment, Claims VI [sic] also fails.[9]  *See also Rodriguez v. City of Chicago*, 2012

WL 1021791, at * 5 (N.D. Ill. 2012).

### 2. Intentional Infliction of Emotional Distress

To survive summary judgment on a claim for intentional infliction of emotional distress,

plaintiff must present evidence showing that (1) the defendant officers' conduct was truly

---

[8] In plaintiff's First Amended Complaint, he identified his claim for battery as Count I and his claim for false imprisonment as Count VI.  In reading the First Amended Complaint, it is clear that this numbering was in error – that the battery claim is Count VI and the false imprisonment claim in Count VII.  However, in citing the First Amended Complaint, the Court is citing each count as it appears in the document as filed with the Court.

[9] *See supra* n.8.

extreme and outrageous, (2) the officers either intended to inflict emotional distress or knew there was at least a high probability that they would cause severe emotional distress, and (3) the conduct in fact caused severe emotional distress. *See, e.g., Feltmeier v. Feltmeier*, 207 Ill.2d 263, 798 N.E.2d 75, 80 (2003); *McGrath v. Fahey*, 126 Ill.2d 78, 533 N.E.2d 806, 809 (1988).

Plaintiff has not presented any evidence to establish truly extreme and outrageous conduct as a matter of law. To satisfy this element, defendants' conduct must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier*, 798 N.E.2d at 83. Taking the facts in the light most favorable to plaintiff that the defendant officers pointed a gun a him, placed him in handcuffs for period of time that did not exceed ten minutes, and mistakenly detained him in an investigation as a suspect for auto burglary, the defendant officers' actions were based on probable cause and did not come close to being "truly extreme and outrageous," even though the officers ultimately were mistaken about plaintiff's role in a burglary. The undisputed facts show as a matter of law that the defendant officers' conduct was neither extreme nor outrageous. Therefore, summary judgment is granted as to Count VIII of plaintiff's First Amended Complaint.


### 3. Battery

The primary issue underlying both an excessive force and battery claims is whether the force used by police was objectively reasonable under the circumstances. *See Rusinowski v. Village of Hillside*, 835 F. Supp. 2d 641, 649 (N.D. Ill. 2011), citing *Wells v. Coker*, 2011 WL 4381488, at *7 (C.D. Ill. 2011). If the force used was objectively reasonable, then both claims are barred. *Rusinowski*, 835 F. Supp. 2d at 649. Here, because the Court has determined that the

defendant officers' use of force was objectively reasonable, plaintiff cannot recover on his state law battery claim. *See Soriano v. Town of Cicero*, 2010 WL 3418260, at *7 (N.D. Ill. 2010) ("[I]f the force used by the Officers was reasonable and justified, [the plaintiff's] state-law battery claim must fail"); *Madlock v. City of Peoria*, 2010 WL 3853273, at *6 (C.D. Ill. 2010) (granting summary judgment in favor of the defendants on the state law assault and battery claims where the court found the officers were objectively reasonable in their use of force). Therefore, summary judgment is granted as to Count I [sic] of plaintiff's First Amended Complaint.[10]

### 4. Respondeat Superior and Indemnification

"A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (citation and quotation omitted). If the state law claims are dismissed, so must the respondeat superior claim because the only other claims asserted are the federal claims for false arrest, unreasonable seizure and excessive force pursuant to section 1983. *See Moore v. City of Chicago*, 2011 WL 1231318, at *5 (N.D. Ill. 2011).

Plaintiff's state law indemnification claim against the City of Chicago also fails as matter of law because plaintiff has not established liability against any of the City's employees. The Illinois Local Government and Governmental Employees Tort Immunity Act directs municipalities to pay tort judgment and settlement for the liability of municipal employees acting within the scope of their employment. 745 ILCS 10/9-102. But Illinois law exempts public entities from liability "for any injury resulting from an act or omission of its employee where the

---

[10] *See supra* n.8.

employee is not liable." 745 ILCS 10/2-109. Because the Court concludes that the defendant officers are entitled to summary judgment on all claims, plaintiff has not established the employee liability necessary for indemnification. *See Williams v. Edwards*, 2012 WL 983788, at *15 (N.D. Ill. 2012). Therefore, Count IX fails as a matter of law.

In the interest of judicial economy, convenience, fairness, and comity, the Court retains jurisdiction over the state law claims and enters summary judgment on in favor of all of defendants on each of plaintiff's state law claims — Counts I [sic], VI [sic], VIII and IX.[11]

## IV. CONCLUSION

Based on the undisputed evidence before the Court, plaintiff's claims fail as a matter of law. For all of the reasons set forth in the Court's Memorandum Opinion and Order, defendants' motion for summary judgment [Dkt.#70] is granted as to all claims. The Clerk is directed to enter judgment in favor of defendants and against plaintiff. This is a final and appealable order.

---

[11] *See supra* n.8.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge


Dated: September 21, 2012